UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ELVIS JOSE ROSALES ROSALES,

      Petitioner,

v.

JEFFERY SEARLS,
*Facility Director, Buffalo Federal Detention Facility*, and

MERRICK GARLAND,[1]
*Attorney General, United States*,

      Respondents.[2]

20-CV-1444-LJV
DECISION & ORDER

---

Elvis Jose Rosales Rosales has been detained in the custody of the United States Department of Homeland Security since March 17, 2020—fourteen months. Docket Item 4-2 at 18. On October 6, 2020, Rosales Rosales filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. Docket Item 1.

---

[1] The caption has been updated under Federal Rule of Civil Procedure 25(d). The Clerk of the Court shall substitute Merrick Garland for William Barr on the docket.

[2] In its memorandum of law, the government argues that the only proper respondent in this matter is Jeffrey Searls, "the person with direct control over [Rosales Rosales]." Docket Item 7 at 6. "Because resolution of who is the proper respondent will not affect the disposition of this petition, the Court will not address it further." *Khemlal v. Shanahan*, 2014 WL 5020596, at *2 n.3 (S.D.N.Y. Oct. 8, 2014). It is clear that, at the very least, Searls "has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, [so] that he may be liberated if no sufficient reason is shown to the contrary." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

On November 23, 2020, the respondents answered the petition, Docket Items 4, 6; and on January 4, 2021, Rosales Rosales replied, Docket Item 9.

For the reasons that follow, this Court grants Rosales Rosales's petition in part.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").

Rosales Rosales is a native and citizen of Costa Rica.  *See* Docket Item 4-1 at 2. He last entered the United States on August 17, 2017, *id.*, but he has lived in the United States since at least June 2015, *see* Docket Item 4-2 at 9 (noting that Rosales Rosales lived in New Jersey beginning in June 2015).

On October 15, 2018, Rosales Rosales was arrested after he helped an undocumented immigrant enter the United States from Canada.  Docket Item 4-1 at 2; *see also* 4-2 at 19-20.  On March 16, 2020, Rosales Rosales was convicted of "[b]ringing in and harboring certain aliens" under 8 U.S.C. § 1423(a)(2)(A) and sentenced to time served.  Docket Item 4-2 at 27.

On March 17, 2020, Rosales Rosales was held at "the Clinton County Jail to await immigration proceedings," *id.* at 20, and on April 1, 2020, he was transferred to BFDF, Docket Item 4-1 at 3.  In the meantime, on March 27, 2020, DHS issued a "Notice to Appear," charging that Rosales Rosales was subject to removal from the United States under various provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537.  More specifically, DHS charged that Rosales Rosales was subject to removal under section 1227(a)(2)(A)(iii) for having been convicted of an

2

aggravated felony "relating to alien smuggling," see id. § 1101(a)(43)(N).  Docket Item 4-2 at 27.

On September 25, 2020, an Immigration Judge ("IJ") ordered Rosales Rosales removed from the United States.  Docket Item 4-1 at 4.  On October 23, 2020, Rosales Rosales appealed the IJ's order of removal to the Board of Immigration Appeals ("BIA").  Id.  That appeal remains pending.  Id.

## DISCUSSION

### I.   HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'"  Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Rosales Rosales is validly detained under 8 U.S.C. § 1226(c) as a noncitizen with pending removal proceedings who has been convicted of crimes relating to alien smuggling.  Docket Item 7 at 5.

Rosales Rosales disagrees on three grounds.[3]  First, he argues that his detention for more than six months is greater than the "period reasonably necessary to secure [his] removal" and that "his removal is not significantly likely to occur in the reasonably foreseeable future."  Docket Item 1 at 8 (citing Zadvydas v. Davis, 533 U.S. 678, 701 (2001)).  Second, he argues that his "prolonged" detention "violates his right to substantive due process" under the Fifth Amendment to the United States Constitution.

---

[3] Because Rosales Rosales is proceeding pro se, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).

3

*Id.* at 7.  And third, he argues that his detention without "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" violates his right to procedural due process under the Fifth Amendment.  *Id.* at 6-7.

## II.     STATUTORY CHALLENGE

Rosales Rosales first argues that his detention for more than six months is greater than the "period reasonably necessary to secure [his] removal" and that "his removal is not significantly likely to occur in the reasonably foreseeable future."  Docket Item 1 at 8.  This Court construes that as a challenge to his detention under 8 U.S.C. § 1231 as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. at 701.  Therefore, the Court begins by considering the statutory basis for Rosales Rosales's detention so that it can evaluate the section 1231 challenge.

"Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."  *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018).  Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation."  *Id.* at 53.  "[T]he 'removal period' [is] the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the [noncitizen].'"  *Id.* at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).

Here, the government and Rosales Rosales seem to agree that Rosales Rosales's detention is governed by 8 U.S.C. § 1226(c), not section 1231.  *See* Docket Item 7 at 6; Docket Item 1 at 3.  This Court agrees as well.

Rosales Rosales is not subject to a final order of removal because his appeal of the IJ's decision denying relief from removal still is pending before the BIA, Docket Item 4-1 at 4; his detention therefore is governed by 8 U.S.C. § 1226(c), not section 1231.

4

Because Rosales Rosales is not detained under section 1231(a), this Court rejects his argument that his detention violates that provision as interpreted by the Supreme Court in *Zadvydas*.

### III.  DUE PROCESS

Rosales Rosales also alleges that his continued detention violates the Due Process Clause.  *See* Docket Item 1 at 6-7.  The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty."  *Id.* (citations omitted).  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.*  "This requirement has traditionally been referred to as 'procedural' due process."  *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint."  *Id.* (emphasis in original) (citations omitted).  Other than those unique, special, and narrow

5

circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government."  *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[]."  *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens."  *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A.    Substantive Due Process

Rosales Rosales argues that his detention violates his right to substantive due process.  Docket Item 1 at 7.  He has been in DHS custody since March 17, 2020—fourteen months.  *See* Docket Item 4-2 at 18.  But this Court cannot say that detention that long violates due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process).  Indeed, detention under section 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991),

6

and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749.  Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

### B.      Procedural Due Process

Rosales Rosales also challenges the procedural safeguards that apply to his continued detention.  Docket Item 1 at 5-7.  The Due Process Clause is not offended by the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, *J.*, concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans*, 2019 WL 955353, at *5.  "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id.*  "If it has not, then there is no procedural due process violation." *Id.*  "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id.* (quoting

7

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to a [noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### 1. Rosales Rosales's Detention

"[W]hen weighing the lawfulness of continued detention of a [noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). For example, this Court has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. Rosales Rosales has been in DHS custody since March 17, 2020—fourteen months. *See* Docket Item 4-2 at 18. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (and cases cited therein). In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[4]

---

[4] *See, e.g.*, *Sophia v. Decker*, 2020 WL 764279, at *4 (S.D.N.Y. Feb. 14, 2020) (approximately seven months); *Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) (approximately nine-and-a-half months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (over seven months and over nine months by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D.

8

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of . . . detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*."  *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Rosales Rosales's fourteen-month detention is more than triple the four-month average cited in *Demore*.  The length of Rosales Rosales's detention therefore supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention.  Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Rosales Rosales's detention.  *See Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).  "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the

---

Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").  *But cf. Minaya-Rodriguez v. Barr*, 459 F. Supp. 3d 488, 497 (W.D.N.Y. 2020) (noting that "procedural due process claims by petitioners detained for 6 to approximately 12 months while awaiting final orders in their immigration proceedings generally do not succeed—unless the government caused extreme delay or engaged in dilatory conduct").

stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5.

The respondents do not offer any information about the conditions at BFDF, but Rosales Rosales does. He asserts that the conditions he faces are "repressive and difficult," Docket Item 9 at 6-7—in fact, "worse" than in a prison, Docket Item 1 at 9-10. He says that he is locked in a cell for "eighteen hours daily"; that he has "face[d] ridicule and harassment" because of his sexual orientation; and that he "has had multiple issues with the lack[ of and ]availability of timely and focused medical treatment." Docket Item 9 at 6.

Because of Rosales Rosales's confinement to a cell and the other conditions he describes, conditions for him at BFDF certainly "resemble penal confinement." *See Muse*, 2018 WL 4466052, at *5. Moreover, this Court has previously found that conditions at BFDF are akin to prison conditions, especially for detainees, such as Rosales Rosales, who have criminal records. *See Barrie v. Barr*, 2020 WL 1877706, at *5 (W.D.N.Y. Apr. 15, 2020). This factor therefore weighs in Rosales Rosales's favor as well.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention unreasonable when a noncitizen has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process. A

[noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6). Indeed,

> although a [noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that a [noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonableness.

*Id.*

The respondents argue that Rosales Rosales is responsible for the delay here. *See* Docket Item 7 at 2-3. This Court disagrees.

On April 22, 2020, Rosales Rosales appeared with counsel for a master calendar hearing. Docket Item 4-1 at 3. Rosales Rosales requested an adjournment so that his counsel could prepare, "as he had only been hired shortly prior to that date." Docket Item 9 at 2. The hearing therefore was adjourned until May 6, 2020, but because Rosales Rosales's counsel failed to file the necessary paperwork, it was rescheduled to May 27, 2020. *See* Docket Item 4-1 at 3; Docket Item 9 at 2. On May 27, 2020, Rosales Rosales appeared for the hearing, but his counsel again failed to file the necessary paperwork. *Id.* On May 29, 2020, Rosales Rosales then filed an I-589 application seeking withholding of removal and a claim under the Convention Against Torture. Docket Item 4-1 at 3; Docket Item 4-2 at 6.

On August 13, 2020, an IJ held that Rosales Rosales's conviction was for a particularly serious crime, and she denied his request to file for re-adjustment of his status and for a waiver of inadmissibility. *Id.*; Docket Item 4-2 at 15. On September 25,

11

2020, the IJ ordered Rosales Rosales removed.  Docket Item 4-1 at 3.  On October 23, 2020, Rosales Rosales appealed the IJ's order of removal to the BIA.  *Id.* at 4.

Although Rosales Rosales may have caused some of the delay in his removal process, he certainly has not "abus[ed] the processes provided to him."  *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436).  Other than the first continuance, it appears that any other delay was the result of circumstances outside Rosales Rosales's control—namely, the repeated failures of his immigration attorney to file the appropriate paperwork on time.[5]  But even attributing counsel's delays to Rosales Rosales, that still would amount to a delay of only about one month.  And even excluding that time, Rosales Rosales still has been detained for more than a year.  Therefore, the third factor also weighs in Rosales Rosales's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  This Court declines to weigh the merits of Rosales Rosales's claims currently pending before the BIA.

After balancing all these factors, this Court finds that Rosales Rosales's detention has been unreasonably prolonged.  Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably-prolonged detention demands.

### 2. The Process Due to Rosales Rosales

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting

---

[5] Indeed, one of the grounds for Rosales Rosales's appeal to the BIA is ineffective assistance of counsel.  Docket Item 4-2 at 2.

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Rosales Rosales's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Rosales Rosales's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Rosales Rosales has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Rosales Rosales has not conceded his deportability, and the resolution of that issue remains pending before the BIA. In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability. *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest. Rosales Rosales says that his husband of five years is a United States citizen. *See* Docket Item 9 at 9; *see also* Docket Item 4-1 at 7. Rosales Rosales's husband lives not in Costa Rica,

where the government wishes to send him, but in the United States, where Rosales Rosales has lived for the last six years. *See id.* Thus, if Rosales Rosales chose not to challenge his removal, he would "lose the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual." *Landon*, 459 U.S. at 34.

This Court recognizes that the government's interest in detaining Rosales Rosales also may be strong. In fact, Rosales Rosales is detained under 8 U.S.C. § 1226(c), which applies to noncitizens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S. Ct. at 837. "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[6] *Id.* at 846. Thus, in mandating the detention of criminal noncitizens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community. *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal [noncitizens] who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal [noncitizens] failed to appear for their removal hearings").[7] "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. And general concerns about the risk of flight highlight the government's compelling interest in preserving its

---

[6] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

[7] The Court noted that this number included noncitizens who were released from custody *without* an individualized bond hearing. *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these [noncitizens] on bond, it is not clear that *all* of the [noncitizens] released were in fact given individualized bond hearings." (emphasis in original)).

"ability to later carry out its broader responsibilities over immigration matters." *Doherty*, 943 F.2d at 211.

### 3. The Procedures Used

When Rosales Rosales was taken into custody, a border patrol agent signed a form indicating that Rosales Rosales would be detained without bond during the pendency of his removal proceedings. *See* Docket Item 4-2 at 20. And there is no indication in the record that Rosales Rosales has been given an opportunity to challenge that decision. This Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation to Rosales Rosales's liberty interests. Moreover, section 1226(c) prohibits the government from offering a detainee the opportunity to challenge at a hearing whether he is, in fact, a danger or a flight risk. *Jennings*, 138 S. Ct. at 846. Now that Rosales Rosales's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *see Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation omitted). When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest. *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding

15

are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)). That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the noncitizen will appear for any future proceeding.[8] This requires consideration of less-restrictive alternatives to detention. *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

### C. Conclusion

Rosales Rosales's section 1226(c) detention has been unreasonably prolonged. Because section 1226(c) does not require an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him, it is unconstitutional as applied to him. As such, his continued detention violates the Due Process Clause.

---

[8] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

Rosales Rosales must be released unless, no later than **fourteen calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Rosales Rosales's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decisionmaker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that **within fourteen calendar days of the date of this decision and order**, the government must release Rosales Rosales from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Rosales Rosales's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests.  In other words, the decisionmaker must find that no condition or combination of conditions of release can reasonably ensure Rosales Rosales's appearance and the safety of the

community—that is, even with conditions, Rosales Rosales presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within thirty days of the date of this decision and order**, the government shall file an affidavit certifying compliance with this order. That affidavit should include a copy of the bond hearing order.

SO ORDERED.

Dated:   May 17, 2021
         Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE